**Konrad L. Trope** (SBN: 133214)
TROPE LAW GROUP, P.C.
9100 Wilshire Blvd., Suite 725E
Beverly Hills, California  90212
Phone:  (888) 942-9997
Fax:  (888) 942-9997
Email: ktrope@tropelawgroup.com

Attorneys for Plaintiff Duncan McIntosh Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUNCAN McINTOSH COMPANY INC., a California corporation,<br><br>                                    Plaintiff,<br>     vs.<br><br>QUADIENT LEASING USA, INC., a Connecticut corporation; and DOES 1 through 100, inclusive,<br><br>                                    Defendants. | Case No.<br><br>**COMPLAINT FOR**:<br><br>1.  Fraud;<br>2.  Breach of Contractual Covenant of Good Faith and Fair Dealing; and<br>3.  Declaratory Relief.<br><br><br>**JURY DEMAND** |

**COMES NOW**, Plaintiff DUNCAN McINTOSH COMPANY INC., a California corporation and brings the following complaint against Defendant QUADIENT LEASING USA, INC., a Connecticut corporation, and hereby alleges as follows:

## THE PARTIES

1.      Plaintiff DUNCAN McINTOSH COMPANY INC., at all times relevant hereto, has been, and still is a California corporation based in Orange County, California ("DMCI").

2.      Defendant QUADIENT LEASING USA, INC., a Connecticut

1  corporation, at all time relevant hereto, has been, and still is a Connecticut

2  corporation.

3       3.      The true names and capacities of the Defendants sued in this

4  Complaint as DOES 1 through 100, inclusive, whether individual, corporate,

5  associate, or otherwise, are presently unknown to Plaintiff who therefore sue

6  these Defendants by such fictitious names.  Plaintiff will amend this Complaint

7  to set forth the true names and capacities of DOES 1 through 100, inclusive,

8  when they have been ascertained or at the time of trial herein.  Plaintiff is

9  informed, believes and thereon alleges that each of these such fictitiously

10  named Defendants participated in some manner in the events and occurrences

11  referred to hereinafter and/or proximately caused the damages complained of

12  herein.

13       4.      Plaintiff is informed, believes and thereon alleges that, at all times

14  herein mentioned, each of the Defendants (including *inter alia*, the fictitiously

15  named Defendants) was the agent, servant, employee, partner, joint venturer or

16  co-conspirator of each of the other Defendants, and doing the things herein

17  alleged, was acting in the scope of that agency, employment, partnership,

18  venture and/or conspiracy with the permission, consent or ratification of each

19  such co-Defendants in doing the acts and/or omissions detrimental to the rights

20  and interests of Plaintiff as alleged in this Complaint.

21                    **JURISDICTION AND VENUE**

22       5.      Plaintiff DMCI brings this civil action pursuant to 28 U.S.C. §

23  1332 which mandates that the District Courts shall have regional jurisdiction

24  where the civil matter in controversy exceeds the sum of $75,000, exclusive of

25  interest and costs, and is between citizens of different states.

26       6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391

27  inasmuch as a substantial part of the events or omissions giving rise to the

28  claims for relief occurred in this judicial district.

**FACTUAL ALLEGATIONS**

<u>**COMMON TO ALL CAUSES OF ACTION**</u>

7.      During the period of March 24 through April 28, 2018, Duncan McIntosh, as President of DMCI, had discussions with the sales representative for the supplier of a postage meter machine ("PMM"), but financed by the Defendant.  Pursuant to that contract, the supplier, Office 1, served as the agent for concluding the transaction whereby Plaintiff DMCI thought it was purchasing a postage machine.   A true and correct copy of the PMM Agreement is attached hereto and incorporated herein as Exhibit "1."

8.      Mr. McIntosh relied on the representations of the sale representative, who was concluding this transaction on behalf of Defendant, who was the lender that was financing the transaction.

9.      In relying on the representations of  the sale representative, Mr. McIntosh believed that his company, Plaintiff DMCI, was purchasing the PMM on a sixty month arrangement, similar to buying a car.

10.      It was reasonable for Mr. McIntosh to rely on these representations as the business needs of Plaintiff DMCI had grown such that DMCI needed a larger and more robust PMM to handle the needs of its various companies, including but not limited to DMCI, OC Weekly, Go Boating, the San Diego Log and the Fred Hall Shows.

11.      Mr. McIntosh only recently learned, as President of DMCI, that the PMM Agreement attached hereto as Exhibit "1" did not give him the rights of ownership, but was merely a lease agreement.  Furthermore, he found out that purchasing the PMM outright after the lease term expired was an outrageous amount of money and that he could access the Internet and find the same PMM at a very low price.

12.      Had Mr. McIntosh known the true nature of the contract, he never would have authorized the transaction, nor would he have entered into a

COMPLAINT

1   transaction for merely leasing the PMM.

2       13.   DMCI is in the business of putting on events and exhibitions which

3   are focused on the boating, camping, fishing and yachting community.  These

4   events and exhibitions require the gathering of large groups of people in close

5   proximity.  DMCI is responsible for putting on six different shows annually

6   which include the Newport Beach Boat Show, held in Newport Beach,

7   California, the Los Angeles Harbor Boat Show, held in the Los Angeles Harbor

8   in San Pedro, California, the San Diego International Boat Show, held in San

9   Diego, California, as well as the Los Angeles Boat Show, held at the Los

10  Angeles County Fairgrounds Fairplex in Pomona, California.  In addition,

11  DMCI also produces the Fred Hall Shows which are two shows per year held in

12  Long Beach, California and in San Diego, California.  The Fred Hall Shows

13  focus is on fishing, camping and related boating activities.  The McIntosh Boat

14  Shows cater to the boating and yachting community.

15      14.   The McIntosh Boat Shows and the Fred Hall Shows events have

16  been produced for over fifty years and, thus, are a staple of the local economies

17  of the cities and counties in which they are hosted.

18      15.   In or about January of 2020, it was reported that a very virulent and

19  extremely contagious disease was spreading across China and was making its

20  way into Europe and possibly into the United States.  This disease eventually

21  became known as COVID-19, and its wide spread infection of millions of

22  people has become known as the "Covid Crisis."  The Covid Crisis has been

23  declared to be an emergency at the national, state and local governmental levels

24  since late mid-March, if not late February.  The Covid Crisis has devastated

25  business operations all across the country creating massive unemployment and

26  disruption to or destruction of businesses of all sizes.

27      16.   With the Covid Crisis and the various government pronouncements

28  restricting or banning large gatherings, all economic activity for DMCI has

1   come to a halt.  Therefore, Plaintiff DMCI is essentially out of business at the

2   moment, with no cash flow because there are no boat shows or other similar

3   events taking place for the foreseeable future.

4         17.   With the onset of the Covid Crisis in March 2020 and with federal,

5   state and local governments declaring a state of emergency, along with the US

6   economy being severely impacted, Mr. McIntosh sought to renegotiate the

7   terms of Exhibit "1" or at least have some sort of deferral in light of the fact that

8   his companies were all essentially shut down

9         18.   In fact, in mid-March 2020, representatives of DMCI approached

10   representatives of Defendant and explained that for economic reasons caused by

11   the Covid Crisis, DMCI could no longer maintain its contract obligations on the

12   PMM.

13         19.   Representatives of Defendant were unresponsive.

14         20.   Accordingly, DMCI had to complete shutting down all of its

15   businesses, including vacating the premises rented out by his companies at

16   18475 Bandilier Circle, Fountain Valley, Californian, 92708 (the "Premises").

17   As part of vacating the Premises, Plaintiff DMCI arranged for the PMM to be

18   drop-shipped to the Defendant, who received shipment of the PMM in October

19   2020.

20         21.   Nevertheless, Defendant is claiming that Plaintiff DMCI is still

21   liable under Exhibit "1."

22         **FIRST CLAIM FOR RELIEF**

23         [Fraud, Against All Defendants]

24         22.   Plaintiff realleges, adopts and incorporates by reference, each and

25   every allegation contained in Paragraphs 1 through 21, inclusive, of this

26   Complaint as though fully set forth herein.

27         23.   Plaintiff's reliance on Defendant's representations were reasonable.

28   At the time the representations were made by agents of Defendant, Defendant

COMPLAINT

1    knew, at some point, they were false.  Yet the Defendant knew that Plaintiff was

2    relying on these representations in carrying out the actions described herein

3    above.

4         24.    Plaintiff did not know the representations were false and believed

5    them to be true.  If Plaintiff had known the Defendant's representations were

6    false, Plaintiff would not have undertaken the efforts it did in responding to the

7    Covid Crisis with vacating the Premises.

8         25.    The Defendant concealed and suppressed these facts with the intent

9    to defraud and induce Plaintiff to enter into the PMM Agreement knowing that

10   Plaintiff was seeking a purchase agreement and not a lease agreement.

11        26.    At the time Plaintiff acted, Plaintiff was unaware of the concealed

12   or suppressed facts and would not have so acted if it had known the facts.

13        27.    As a result of the fraudulent conduct of Defendant, Plaintiff is

14   entitled to rescission of the PMM Agreement and to recover any amounts

15   incurred in reliance of those fraudulent representations which are unascertained

16   at this time, but which Plaintiff believes to be in excess of $150,000.  When the

17   actual amount of such sums is ascertained, Plaintiff will amend this Complaint

18   to assert the same on behalf of Plaintiff and will seek recover of such amount in

19   accordance with proof at the time of trial.

20        28.    As a result of the fraudulent conduct of Defendant, Plaintiff has

21   been damaged in an amount that is presently ascertain but which Plaintiff

22   believes to be in excess of $150,000.  When the actual amount of such damages

23   are ascertained, Plaintiff will amend this Complaint to assert same or Plaintiff

24   will seek damages in accordance with proof at the time of trial.

25        29.    Defendant, in performing the conduct complained of herein, acted

26   willfully and with intent to cause injury to Plaintiff DMCI.  Defendant is

27   therefore guilty of malice and oppression in conscious disregard of Plaintiff's

28   rights thereby warranting an assessment of punitive damages or exemplary

COMPLAINT

1    damages or enhanced damages to the extent allowed by law in an amount

2    appropriate to punish Defendant and deter others from engaging in such

3    conduct.

4    **SECOND CLAIM FOR RELIEF**

5    [Breach of Contractual Covenant of Good Faith and Fair Dealing

6    Against All Defendants]

7         30.    Plaintiff realleges, adopts and incorporates by reference, each and

8    every allegation contained in Paragraphs 1 through 29, inclusive, of this

9    Complaint as though fully set forth herein.

10        31.    Defendant has breached the covenant of good faith and fair dealing

11   found in every contract under California law and since this contract was

12   performed within the state of California, the breach of the covenant of good

13   faith and fair dealing should be adjudicated as a state law claim for which this

14   court has supplemental jurisdiction.

15        32.    Defendant's conduct was wilful, malicious and with a clear intent

16   to defraud Plaintiff.  Thus, the implied covenant of good faith and fair dealing

17   was clearly violated by the conduct of Defendant.

18   **THIRD CLAIM FOR RELIEF**

19   [Declaratory Relief, Against All Defendants]

20        33.    Plaintiffs realleges, adopts and incorporates by reference, each and

21   every allegation contained in Paragraphs 1 through 32, inclusive, of this

22   Complaint as though fully set forth herein.

23        34.    An actual controversy exists between Plaintiff and Defendant

24   concerning their respective rights and duties, one to the other, arising out of the

25   above-described business transactions and occurrences including, but not

26   limited to allegations by Defendant that Plaintiff is in breach of its contractual

27   obligations under the PMM Agreement.

28        35.    Plaintiff desires a judicial determination of its rights and duties.

7

COMPLAINT

Plaintiff contends that it has numerous defenses to its obligations under the PMM Agreement including, but not limited to the Covid Crisis (force majeure), frustration of purpose, and impossibility of performance.

36.     A judicial declaration is necessary and appropriate at this time under the circumstances.

## **PRAYER**

**WHEREFORE**, Plaintiff prays for judgment to be entered in its favor and against Defendants as follows:

**On the First Cause of Action**:

1.     For compensatory damages in an amount in excess of $150,000 according to proof;

2.     For general damages in an amount of at least $150,000 according to proof;

3.     For punitive damages to be determined at trial;

4.     For interest on all damages at the legal rate on an amount according to proof;

5.     For reasonable attorneys' fees in an amount according to proof;

6.     For costs of suit incurred herein; and

7.     For such other and further relief as this honorable court deems just and appropriate.

**On the Second Cause of Action**:

1.     For compensatory damages in an amount in excess of $150,000 according to proof;

2.     For general damages in an amount of at least $150,000 according to proof;

3.     For punitive damages to be determined at trial;

4.     For interest on all damages at the legal rate on an amount

COMPLAINT

1  according to proof;

2      5.    For reasonable attorneys' fees in an amount according to proof;

3      6.    For costs of suit incurred herein; and

4      7.    For such other and further relief as this honorable court deems just

5  and appropriate.

6      **On the Third Cause of Action**:

7      1.    For a determination by the Court that Plaintiff's obligations under

8  the Agreement are fully and completely discharged and/or otherwise excused;

9      2.    For reasonable attorneys' fees in an amount according to proof;

10     3.    For costs of suit incurred herein; and

11     4.    For such other and further relief as this honorable court deems just

12  and appropriate.

Dated:    August 3, 2021    TROPE LAW GROUP, P.C.

KONRAD L. TROPE,
Attorneys for Plaintiff Duncan McIntosh Inc.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs hereby demand a trial by jury on all issues triable by a jury in the above-entitled action.

Dated:    August 3, 2021    TROPE LAW GROUP, P.C.

KONRAD L. TROPE,
Attorneys for Plaintiff Duncan McIntosh Inc.